# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONNIE LEO MITZEL,<br><br>                Plaintiff,<br><br>         v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                Defendant. | Case No. 1:20-cv-01757-BAK<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL<br>SECURITY APPEAL<br><br>(ECF Nos. 14, 16, 17) |

## I.

## INTRODUCTION

Lonnie Leo Mitzel ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

## II.

## BACKGROUND

### A.       Procedural History

On May 22, 2017, Plaintiff filed a Title XVI application for supplemental security

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 10, 11.)

income.  (AR 192-93.)  Plaintiff's application was initially denied on September 22, 2017, and denied upon reconsideration on November 8, 2017.  (AR 114-118, 119-122.)  Plaintiff requested a hearing, and appeared for a hearing on February 26, 2020, via video, before Administrative Law Judge Erin Justice (the "ALJ").  (AR 129, 40-64.)  On March 11, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 17-39.)  The Appeals Council denied Plaintiff's request for review on October 7, 2020.  (AR 1-6.)

On December 11, 2020, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On July 19, 2021, Defendant filed the administrative record ("AR") in this action.  (ECF No. 10-1.)  On September 23, 2021, Plaintiff filed an opening brief.  (Pl.'s Opening Br. ("Br."), ECF No. 14.)  On October 4, 2021, Defendant filed an opposition brief.  (Def.'s Opp'n ("Opp'n"), ECF No. 16.)  On October 19, 2021, Plaintiff filed a reply brief.  (Pl.'s Reply ("Reply"), ECF No. 17.)

**B.      The ALJ's Findings of Fact and Conclusions of Law**

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, September 12, 2019:

- Plaintiff has not engaged in substantial gainful activity since May 22, 2017, the application date.

- Plaintiff has the following severe impairments: anxiety, bipolar disorder, and mild neurocognitive disorder due to HIV infection.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

- Plaintiff  has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff can perform simple but not detailed work and can have occasional interaction with the general public and frequent interaction with coworkers.  Plaintiff cannot perform strict, production- pace work, such as assembly line work.  The claimant can tolerate occasional changes in the workplace.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff was born on April 26, 1967, and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.
- Plaintiff has at least a high school education and is able to communicate in English.
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Plaintiff is "not disabled," whether or not the Plaintiff has transferable job skills.
- Considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, since May 22, 2017, the date the application was filed.

(AR 20-33.)

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

///

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff raises six separate challenges to the ALJ's findings and conclusions: (1) whether the ALJ's residual functional capacity ("RFC") finding is based on insubstantial evidence and legal error; (2) whether the ALJ failed to give legally adequate reasons for rejecting the portions of Dr. Venter's opinion she did not accept; (3) whether the ALJ's interpretation of Dr. Soliman's report is substantial evidence; (4) whether the ALJ gave legally adequate reasons for rejecting Dr. Farooqi's opinion; (4) whether the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's testimony; (5) whether the ALJ's failure to consider Mr. Taboada's supporting statement is legal error; and (6) whether the ALJ erred at Step Five of the sequential evaluation. (Br. 16.)

For the reasons explained below, the Court finds the ALJ erred as to the last of Plaintiff's challenges, by failing to resolve a conflict between the vocational expert's testimony and the RFC, at Step Five of the sequential evaluation. The Court has determined this action should be remanded based on such error. The Court declines to address the remaining five challenges, because even if the Court were to find no legal error as to the first five challenges, this case would still need to be remanded to resolve the apparent conflict at Step Five. Nonetheless, the Court notes the five challenges do, upon a cursory review, appear to have some merit, and thus upon remand, the ALJ shall consider the need to reevaluate any of the evidence and findings that are the subject of the other five challenges raised by Plaintiff in this action.

**A.     Whether the ALJ Erred at Step Five**

Plaintiff submits that the jobs identified by the ALJ and VE require reasoning levels beyond that found by the ALJ in her RFC, and therefore the ALJ's Step Five finding fails on its face. (Br. 32.)

1.     General Legal Standards

At Step Four of the sequential evaluation process, the ALJ assesses the claimant's "residual functional capacity" ("RFC"), which is defined as the most that a claimant can do despite the "physical and mental limitations" caused by their impairments and related symptoms.

1    20 C.F.R. § 416.945(a)(1).  At Step Five, "the Commissioner has the burden 'to identify specific

2    jobs existing in substantial numbers in the national economy that [a] claimant can perform

3    despite [his] identified limitations.' "  Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015)

4    (alterations in quoting source) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995))

5    (citing 20 C.F.R. § 416.920(g)).  The ALJ is to consider potential occupations that the claimant

6    may be able to perform.  Zavalin, 778 F.3d at 845; see 20 C.F.R. § 416.966.

7         In making this determination, the ALJ relies on the Dictionary of Occupational Titles

8    ("DOT"), which is the Social Security Administration's "primary source of reliable job

9    information regarding jobs that exist in the national economy."  Zavalin, 778 F.3d at 845-46

10   (internal quotations omitted) (quoting Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir.1990)).

11   "The DOT describes the requirements for each listed occupation, including the necessary

12   General Educational Development ('GED') levels; that is, 'aspects of education (formal and

13   informal) ... required of the worker for satisfactory job performance.' "  Zavalin, 778 F.3d at 846

14   (quoting DOT, App. C, 1991 WL 688702 (4th ed.1991)).  "The GED levels include[] the

15   reasoning ability required to perform the job, ranging from Level 1 (which requires the least

16   reasoning ability) to Level 6 (which requires the most)."  Id.  Along with the DOT, ALJs rely on

17   the testimony of vocational experts who provide testimony concerning specific occupations that

18   a claimant is able to perform based on their residual functional capacity.  Zavalin, 778 F.3d at

19   846 (citing Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir.2009); 20 C.F.R.

20   § 416.966(e)).  In concluding the Step Five analysis, the ALJ determines "whether, given the

21   claimant's [residual functional capacity], age, education, and work experience, he actually can

22   find some work in the national economy."  Valentine, 574 F.3d at 689; see also 20 C.F.R. §

23   416.920(g).

24        "Occupational evidence provided by a VE or VS generally should be consistent with the

25   occupational information supplied by the DOT."  Social Security Ruling ("SSR") 00-4p, 2000

26   WL 1898704, at *2 (Dec. 4, 2000).  Neither the DOT nor the VE evidence automatically

27   "trumps" when there is a conflict.  Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).

28   The ALJ must first determine whether a conflict exists, and if so, the ALJ must determine

1   whether the VE's "explanation for the conflict is reasonable and whether a basis exists for
2   relying on the expert rather than the" DOT.  Id.  Thus, the ALJ must ask the VE to explain the
3   conflict, and must determine whether the VE's explanation is reasonable, before relying on the
4   expert testimony to reach a disability determination.  Zavalin, 778 F.3d at 846 (citing Massachi,
5   486 F.3d at 1153-54).  "The ALJ's failure to resolve an apparent inconsistency may leave us with
6   a gap in the record that precludes us from determining whether the ALJ's decision is supported
7   by substantial evidence."  Id.

8           2.      The Parties' Arguments

9           Plaintiff submits that the jobs identified by the ALJ require reasoning levels beyond that
10  found by the ALJ, and therefore ALJ's Step Five finding fails on its face.  (Br. 32.)  Plaintiff
11  cites no caselaw in support of the argument that the finding is flawed on its face.

12          Defendant responds there is no apparent conflict between the RFC and the jobs identified
13  at Step Five, contending there is no legal error because there is no indication that the ALJ's
14  limitation of "simple but not detailed" work meant the same as the DOT's definition for
15  Reasoning Level 2 jobs of applying "commonsense understanding to carry out detailed but
16  uninvolved written or oral instructions."  (Opp'n 15.)  Defendant submits that therefore Plaintiff
17  did not identify any conflict between the ALJ's RFC and the office helper and laundry worker
18  positions, which are Reasoning Level 2 jobs.  (Id.)  In support of this argument, Defendant
19  directs the Court to Thomas v. Saul, 796 F. App'x 923, 926 (9th Cir. 2019), for the proposition
20  that therein the Ninth Circuit held in the unpublished opinion that there was no conflict between
21  a doctor's opinion that claimant could not handle "detailed instructions" and Reasoning Level 2
22  jobs.  Defendant also notes that Thomas distinguished the facts from Zavalin, 778 F.3d 842 and
23  Rounds v. Comm'r, 807 F.3d 996 (9th Cir. 2015).  (Opp'n 15.)  Defendant additionally cites the
24  unpublished case of Ranstrom v. Colvin, 622 Fed.Appx. 687, 688-89 (9th Cir. 2015), for its
25  statement that: "There is no appreciable difference between the ability to make simple decisions
26  based on 'short, simple instructions' and the ability to use commonsense understanding to carry
27  out 'detailed but uninvolved . . . instructions,' which is what Reasoning Level 2 requires.  (Opp'n
28  15.)

1    In reply briefing, Plaintiff only rests on her original challenge, and does not directly

2    respond to the Defendant's arguments or cases cited in the opposition.  Despite Plaintiff's lack of

3    a substantive response to the cases cited by Defendant,[3] ultimately, the Court finds that based on

4    a review of the relevant caselaw and regulations, the ALJ failed to resolve an apparent conflict at

5    Step Five between the opined RFC and the jobs identified by the VE as defined in the DOT.

6        3.    The Court finds the ALJ Failed to Address an Apparent Conflict at Step Five

7    At Step Four of the sequential evaluation, the ALJ found Plaintiff had the mental capacity

8    to perform "simple but not detailed work."  (AR 24.)  Based on the VE's testimony, the ALJ

9    found Plaintiff could perform the following jobs: office helper, 175,000 positions (Reasoning

10   Level 2), DOT 239.567-010; laundry worker, 160,000 positions, (Reasoning Level 2), DOT

11   302.685-010; and mail clerk, 150,000 positions (Reasoning Level 3), DOT 209.687-026.  (AR

12   32, 61.)

13   Preliminarily, the Court finds that a commonsense or literal reading of the RFC in

14   comparison with the definition of Reasoning Level 2, yields an apparent facial conflict, as

15   Plaintiff argues.   The DOT defines Level One Reasoning as: "Apply commonsense

16   understanding to carry out simple one- or two-step instructions.   Deal with standardized

17   situations with occasional or no variables in or from these situations encountered on the job."

18   DOT, App. C, 1991 WL 688702.  Level Two Reasoning is defined as: "Apply commonsense

19   understanding to carry out detailed but uninvolved written or oral instructions.   Deal with

20   problems involving a few concrete variables in or from standardized situations."  Id.  Level

21   Three Reasoning is defined as: "Apply commonsense understanding to carry out instructions

22   furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete

23   variables in or from standardized situations."  Id.

24   Thus, the most pointed and relevant question here is whether there is an apparent conflict

25   between the definition of Level Two Reasoning, that includes the phrase "detailed but

26   uninvolved" instructions, and Plaintiff's RFC that limited Plaintiff to "simple but not detailed

27   _____

28   [3] Given the Court's granting remand on the Step Five issue, it would have been prudent for Plaintiff to substantively respond to the caselaw cited by Defendant, given Plaintiff originally cited no caselaw in support of the challenge.

1    work."  Simply using a commonsense application of the RFC and the definition of Level Two

2    Reasoning, it appears there would be an apparent conflict for a person that is unable to perform

3    "detailed work," to be able to "carry out detailed but uninvolved" instructions.  This is despite

4    the qualifier of "uninvolved," as even with the qualifier, the RFC forecloses "detailed work," and

5    despite being uninvolved, Level Two Reasoning still requires the ability to apply commonsense

6    understanding to carry out "detailed" instructions.   Having made a facial commonsense

7    determination that there is an apparent conflict, the Court turns to caselaw for guidance.

8           The Court first turns to the primary case cited by Defendant, <u>Thomas</u>.  In <u>Thomas</u>, the

9    Ninth Circuit addressed the issue of whether a psychologist's assessment that the claimant could

10   not handle "detailed instructions" was in conflict with Level Two Reasoning.  The Ninth Circuit

11   found it significant that the DOT used different definitions than the Social Security

12   Administration, found the ALJ was thus not obligated to conclude that the psychologist intended

13   to use the word "detailed" in the same manner as the DOT, and found the case distinguishable

14   from <u>Rounds</u> and <u>Zavalin</u>:

> As the district court noted, the Social Security Administration uses
> a different scheme to assess individuals' abilities than does the
> DOT. The ALJ was not obligated to conclude that Boyd intended
> to use the word "detailed" in exactly the same sense in which the
> DOT employs it. Boyd's other observations reinforce this analysis.
> For example, he commented that Thomas was capable of
> performing "simple, routine type work." Boyd also noted that
> Thomas's ability to deal with "detailed instructions" was only
> "moderately," rather than "markedly," limited. Read as a whole,
> Boyd's report does not conflict with the conclusion that Thomas is
> capable of Level Two reasoning.

> The two primary cases that Thomas relies on to show otherwise are
> distinguishable. First, in *Zavalin v. Colvin*, 778 F.3d 842 (9th Cir.
> 2015), this court held that there was an apparent conflict between
> an RFC to perform "simple, repetitive tasks" and the demands of
> Level Three reasoning. *Id.* at 847. The jobs at issue in the present
> case, in contrast, require only Level Two reasoning abilities.
> Second, in *Rounds v. Commissioner Social Security*
> *Administration*, 807 F.3d 996 (9th Cir. 2015), this court held that
> there was an apparent conflict between the claimant's RFC
> limiting her to "one- and two-step tasks" and the requirements of
> Level Two reasoning. *Id.* at 1003. But nothing in the record
> suggests that Thomas is limited to one- or two-step tasks. Indeed,
> the *Rounds* court explicitly distinguished that case from other
> decisions where courts have concluded that "an RFC limitation to
> 'simple' or 'repetitive' tasks is consistent with Level Two

9

1    reasoning." *Id.* at 1004 n.6 (collecting cases).

2  Thomas, 796 F. App'x at 926.  While the discussion is instructive as to the meaning of "simple,

3  routine work," which the Court discusses in relation to other caselaw below, the Court

4  determines Thomas is distinguishable from the case at hand, at least in that it is not determinative

5  of the issues here.  Here, the ALJ did make an RFC determination with the term "detailed"

6  within the RFC, whereas Thomas looked at the question of whether the ALJ was required to

7  adopt the meaning of the term as employed by a psychologist.  Further, in Thomas, the

8  psychologist's assessment only found a moderate limitation in the ability to deal with detailed

9  instructions, which could fall within the meaning of Level Two Reasoning's definition of

10  "detailed but uninvolved."

11      As for the two cases that the Thomas court found distinguishable, the Court finds both

12  instructive, but the conflict in Rounds to be most analogous to the case at hand.  First, in Zavalin,

13  the Ninth Circuit remanded the case because there was an apparent conflict between the RFC to

14  perform simple, repetitive tasks, and the demands of Level Three Reasoning, which the ALJ had

15  not recognized and reconciled before relying on the VE's testimony:

16          Today, we join the Tenth Circuit and hold that there is an apparent
           conflict between the residual functional capacity to perform
17          simple, repetitive tasks, and the demands of Level 3 Reasoning.
           We find the conflict to be plain when we consider, side-by-side,
18          the definitions of Level 2 and Level 3 Reasoning: [definitions
           omitted].
19
           Level 2 Reasoning—applying common sense to carry out detailed
20          but uncomplicated instructions and dealing with problems
           involving a few variables—seems at least as consistent with
21          Zavalin's limitation as Level 3 Reasoning, if not more
           so. *See Hackett,* 395 F.3d at 1176 (noting that Level 2 "appears
22          more consistent" than Level 3 for a claimant limited to simple,
           routine tasks). Further, Zavalin's limitation to simple, routine tasks
23          is at odds with Level 3's requirements because "it may be difficult
           for a person limited to simple, repetitive tasks to follow
24          instructions in 'diagrammatic form' as such instructions can be
           abstract." *Adams,* 2011 WL 1833015, at *4.
25

26  Zavalin, 778 F.3d at 847.  In Rounds, the Ninth Circuit found a conflict between the claimant's

27  RFC limiting her to one- and two-step tasks, and Level Two Reasoning:

28          Under these circumstances, *Zavalin* is controlling. There was an

10

apparent conflict between Rounds' RFC, which limits her to performing one- and two-step tasks, and the demands of Level Two reasoning, which requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." The conflict between Rounds' RFC and Level Two reasoning is brought into relief by the close similarity between Rounds' RFC and *Level One* reasoning. Level One reasoning requires a person to apply "commonsense understanding to carry out simple one- or two-step instructions." The Commissioner resists the obvious similarity between Rounds' RFC and Level One reasoning, and the concomitant contrast between Rounds' RFC and Level Two reasoning, by stressing that "task" and "instruction" are different terms. In the Commissioner's view, Rounds' inability to complete multi-step *tasks* does not necessarily contradict the VE's opinion that she has the ability to follow detailed *instructions*, as required in Level Two jobs. Based on the record, we disagree. Only tasks with more than one or two steps would require "detailed" instructions. And these are precisely the kinds of tasks Rounds' RFC indicates she cannot perform.

Because the ALJ did not recognize the apparent conflict between Rounds' RFC and the demands of Level Two reasoning, the VE did not address whether the conflict could be resolved. As a result, we "cannot determine whether substantial evidence supports the ALJ's step-five finding." *Id.* at 848 (quoting *Massachi,* 486 F.3d at 1154). On remand, the ALJ must determine whether there is a reasonable explanation to justify relying on the VE's testimony.[5] *See id.* at 846–48; *Massachi,* 486 F.3d at 1153–54; *see also Tommasetti,* 533 F.3d at 1042 ("[A]n ALJ 'may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation.' " (quoting *Johnson,* 60 F.3d at 1435)).

Rounds, 807 F.3d at 1003–04.

As Rounds recognized, where "there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." Rounds, 807 F.3d at 1003 (quoting Zavalin, 778 F.3d at 846) ("We conclude that *Zavalin*—this Court's most recent holding regarding the review of a VE's testimony—controls the analogous facts of this case."). In Rounds, the ALJ had stated "at the outset of the VE's testimony that 'unless you tell me otherwise, I'll assume that your testimony is based on your knowledge, education, training, and experience consistent with the DOT, does that work for you, sir?', to which the VE replied 'Yes, sir.' " Rounds, 807 F.3d at 1003. The Ninth Circuit noted that "[b]ased on that exchange, the ALJ concluded that the VE's

testimony was consistent with the DOT [and] [a]s a result, although the VE's testimony was ostensibly consistent with the DOT, he never directly addressed whether Rounds' limitation to one- to two-step tasks was consistent with jobs requiring Level Two reasoning and, if so, why." Id. The Rounds court thus concluded that under these circumstances, Zavalin was controlling. Id. Similarly, here, during the hearing, the ALJ asked the VE: "[i]s your testimony today consistent with the *Dictionary of Occupational Titles* and its companion publications?" (AR 61.) The VE replied yes, "[h]owever to the extent that it is not addressed in the DOT, for example, the additional supervision, I am relying on my professional experience in vocational rehabilitation to answer." (AR 61.) Accordingly, the Court finds such exchange to correlate with that in Rounds and Zavalin such that it is appropriate to employ a similar analysis as to whether the ALJ erred at Step Five.

The difference between Level One Reasoning and Level Two Reasoning is significant. See Wilson v. Colvin, No. 16-CV-01971-WHO, 2017 WL 1861839, at *6 (N.D. Cal. May 9, 2017) ("*Rounds* shows that a significant distinction exists between Level One and Level Two reasoning jobs, with Level One jobs typically lining up with the ability to perform one or two step job instructions."). In Rounds, the Ninth Circuit found a close similarity between the RFC of "one and two step tasks" and Level One Reasoning. Rounds, 807 F.3d at 1003. The Ninth Circuit determined that "[o]nly tasks with more than one or two steps would require 'detailed' instructions [a]nd these are precisely the kinds of tasks Rounds' RFC indicates she cannot perform." Id.

The Ninth Circuit's straight-forward statement in Rounds that "[o]nly tasks with more than one or two steps would require 'detailed' instructions," the Court finds to be most significant to the case at hand. Id. Here, Plaintiff's RFC restricted her to "perform[ing] simple but not detailed work." (AR 24.) Thus, if only tasks with more than one or two steps require detailed instructions, and if an RFC limiting a claimant to not more than one or two steps is not compatible with Level One Reasoning, the Court finds it more logical than not to conclude that Plaintiff's RFC here foreclosing "detailed work" is in conflict with a Level Two Reasoning job that requires detailed instructions. In short, Level One Reasoning seems more consistent with

the Plaintiff's RFC than Level Two Reasoning.  To state another way and to borrow language from Zavalin (but comparing Level One to Two rather than Two to Three): Level One Reasoning ("Apply commonsense understanding to carry out simple one-or two-step instructions") "seems at least as consistent with [Plaintiff's] limitation as Level [Two] Reasoning[('Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions')], if not more so." Zavalin, 778 F.3d at 847.

The RFC here is similar to that in Craine where the ALJ "did not explicitly limit plaintiff either to one-or two-step instructions or to simple repetitive tasks [but] [i]nstead, she found plaintiff *precluded* from 'complex or detailed tasks.' " Craine v. Berryhill, No. ED CV 15-2344-PLA, 2017 WL 1356314, at *4 (C.D. Cal. Apr. 11, 2017).  There, the Court also found the statement in Rounds that Level Two Reasoning requires more than one or two steps to perform the tasks significant.  See Id. ("Notwithstanding the ALJ's "[a]typical formulation" of plaintiff's RFC limitation  . . . the Court finds that Rounds is analogous and follows its determination that reasoning level 2 occupations, which require the individual to carry out '*detailed* but uninvolved written or oral instructions,' require more than one or two steps to perform the occupation.") (emphasis in original).

Accordingly, the Court finds an apparent conflict between Plaintiff's RFC limitation to "simple but not detailed work," and Level Two Reasoning's requirement to "carry out detailed but uninvolved written or oral instructions."  See Craine, 2017 WL 1356314, at *4 ("Thus, as in Rounds, there is an apparent conflict between plaintiff's RFC limitation to '[non]-*detailed* or [non]-complex tasks' and occupations with level 2 reasoning, which, by definition, involve 'detailed' instructions."); Rounds, 807 F.3d at 1003.  "Because the ALJ did not recognize the apparent conflict between [Plaintiff's] RFC and the demands of Level Two reasoning, the VE did not address whether the conflict could be resolved," and thus the Court "cannot determine whether substantial evidence supports the ALJ's step-five finding." Id. at 1004 (quoting Zavalin, 778 F.3d at 848).

The Court is cognizant of the cases that recognize "a limitation to work involving only 'simple tasks,' 'simple, repetitive tasks,' or 'simple, routine, repetitive work,' is consistent with

1   the ability to perform Level 2 Jobs." <u>Miller v. Kijakazi</u>, No. CV-20-1725-PHX-MTL, 2021 WL

2   5768811, at *8 (D. Ariz. Dec. 6, 2021) (citing <u>Zavalin</u>, 778 F.3d at 847; <u>Abrew v. Astrue</u>, 303

3   Fed. App'x. 567, 569–70 (9th Cir. 2008); <u>Lara v. Astrue</u>, 305 Fed. App'x. 324, 326 (9th Cir.

4   2008).  The unpublished case of <u>Ranstrom</u> also contains statements supportive of Defendant's

5   position, which made the following conclusions:

6           The ALJ found that Ranstrom could work in job settings that
            demand the ability to follow "no more than short, simple
7           instructions and procedures" and require "no more than simple
            decision-making on the part of the claimant." There is no
8           appreciable difference between the ability to make simple
            decisions based on "short, simple instructions" and the ability to
9           use commonsense understanding to carry out "detailed *but
            uninvolved* ... instructions," which is what Reasoning Level 2
10          requires. *See Zavalin v. Colvin,* 778 F.3d 842, 847 (9th
            Cir.2015). Thus, there is no actual conflict between Ranstrom's
11          RFC and the DOT.

12          That conclusion forecloses Ranstrom's Step Five challenge. An
            ALJ's failure to inquire into an apparent conflict is harmless where,
13          as here, there is no actual conflict between the RFC and the DOT.

14

15  <u>Ranstrom</u>, 622 F. App'x at 688–89.  However, here, the Court finds more of a direct conflict

16  between the RFC foreclosing "detailed" work, and the requirement of Level Two Reasoning

17  involving "detailed but uninvolved" instructions, such that the Court declines to extrapolate the

18  reasoning from <u>Ranstrom</u> to the RFC at hand here.  The Court finds the published decision of

19  <u>Rounds</u>, issued after <u>Ranstrom</u>, to be more on point and persuasive to this RFC.  <u>See</u> <u>Zavalin</u>,

20  778 F.3d at 847 ("We find the conflict to be plain when we consider, side-by-side, the definitions

21  of Level 2 and Level 3 Reasoning"); <u>Rounds</u>, 807 F.3d at 1003 ("The conflict between Rounds'

22  RFC and Level Two reasoning is brought into relief by the close similarity between Rounds'

23  RFC and *Level One* reasoning.").

24          In <u>Pugh</u>, the court noted that while the Ninth Circuit had not addressed the issue of

25  whether an RFC limiting a claimant to "simple and detailed" tasks was compatible with Level

26  Two Reasoning's requirement of "[a]pply[ing] commonsense understanding to carry out detailed

27  but uninvolved written or oral instructions," multiple courts in the Circuit had found that when

28  an RFC limits the claimant to "detailed-but-not-complex tasks, this creates an apparent conflict

with Level 3 Reasoning."  Pugh v. Comm'r of Soc. Sec., No. 2:18-CV-1607-KJN, 2019 WL 3936192, at *5 (E.D. Cal. Aug. 20, 2019) (collecting cases).  The Pugh court "join[ed] in the above chorus, finding that an apparent conflict exists between Reasoning Level 3 and an RFC restricting a claimant to 'simple, detailed' tasks (as differentiated from 'complex' tasks)."  Id. The Court finds the reasoning of Pugh as applied to the terms "detailed" and "complex" contained in Level Two and Level Three, respectively, to be in line with the Court's reasoning here as to the finding that there is an apparent conflict with Plaintiff's RFC restricting her to "not detailed" work and the use of the term "detailed" in the definition of Level Two Reasoning.  See Id. at *4 ("Courts have found that someone who can perform "simple and detailed" tasks can perform occupations with a Level 2 Reasoning."); c.f. Meade v. Kijakazi, No. 1:20-CV-00519-BAM, 2021 WL 4429418, at *9 (E.D. Cal. Sept. 27, 2021) ("This Court agrees that 'uninvolved' means 'non-complex,' 'simple,' or 'uncomplicated.'  This modifier to the term 'detailed' must be considered when interpreting the definition of Reasoning Level 2.  Thus, the definition of Reasoning Level 2 requires an individual to carry out 'detailed' but 'non-complex,' 'simple,' or 'uncomplicated' instructions.  The ALJ's finding was that Plaintiff could perform simple, routine work-related tasks.  The requirements of Reasoning Level 2 that an individual be able to carry out 'detailed but uninvolved' instructions accordingly do not conflict with the ALJ's RFC finding."); Saiz v. Saul, No. 1:18-CV-01603-BAM, 2020 WL 860030, at *6 (E.D. Cal. Feb. 21, 2020) ("Here, the ALJ's finding was that Plaintiff could not perform tasks that are both detailed and complex.  The ALJ stated Plaintiff could not do 'detailed' '**and** complex' work tasks, in formulating Plaintiff's RFC. See AR 19. (Emphasis added.)  The RFC finding did not preclude Plaintiff performing tasks that are detailed but non-complex.  The ALJ's language is consistent with Reasoning Level 2.").

Accordingly, for all of the above reasons, the Court finds that there is an apparent conflict between the RFC determination and the VE's testimony concerning available jobs at Step Five. The Court finds the ALJ did not resolve this apparent inconsistency, and thus the Court cannot determine whether the decision is supported by substantial evidence and remand is appropriate to resolve the apparent conflict.  Zavalin, 778 F.3d at 846; Massachi, 486 F.3d at 1153-54; Craine,

1    2017 WL 1356314, at *4; <u>Slover v. Comm'r of Soc. Sec.</u>, No. 1:17-CV-00958-JDP, 2018 WL

2    6460046, at *6 (E.D. Cal. Dec. 10, 2018) ("An error—viewed in the context of the record as a

3    whole—can be harmless . . . [b]ut the omitted considerations here—the interplay between the

4    limitation in the RFC to one- and two-step tasks and the jobs that the ALJ identified (after

5    consulting with the VE) that appear to be GED Reasoning Level 2 or higher—are material

6    considerations, and the court cannot find the ALJ's failure to address them to be harmless.");

7    <u>Miller v. Kijakazi</u>, No. CV-20-1725-PHX-MTL, 2021 WL 5768811, at *9 (D. Ariz. Dec. 6,

8    2021) ("[T]here is a conflict in the vocational evidence that is unresolved.  The Court will

9    remand for further proceedings."); <u>Barrios v. Berryhill</u>, No. CV 16-3984-KS, 2017 WL 1423705,

10   at *6 (C.D. Cal. Apr. 20, 2017) ("Here, based on *Rounds* and *Zavalin*, the answer to the issue

11   presented is not clear and remand is warranted to resolve the apparent conflict between the RFC,

12   the VE's testimony and the DOT.").

13           As the Court stated above, the Court declines to address the remaining five challenges,

14   however, upon a cursory review, finds they appear to have some merit, and thus upon remand,

15   the ALJ shall consider the need to reevaluate any of the evidence and findings that are the

16   subject of the other five challenges raised by Plaintiff in this action, before proceeding to resolve

17   the apparent conflict at Step Five.

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds the ALJ erred by failing to resolve an apparent conflict at Step Five of the sequential analysis.  The Court need not address Plaintiff's remaining challenges to the ALJ's decision, however, the Court instructs the ALJ to determine whether there is a need to reevaluate any of the evidence and findings that are the subject of the other five challenges raised by Plaintiff in this action, before proceeding to resolve the apparent conflict at Step Five.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order.  It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Lonnie Leo Mitzel and against Defendant Commissioner of Social Security.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **July 11, 2022**

UNITED STATES MAGISTRATE JUDGE